UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
QWEST COMMUNICATIONS
CORPORATION,

                Plaintiff,

-against-

THE CITY OF NEW YORK,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 04-CV-3019 (FB) (RLM)

*Appearances:*
*For the Plaintiff:*
ROBERT E. CATTANACH, ESQ.
DAVID M. JACOBSON, ESQ.
JAMES VINCENT PARRAVANI, ESQ.
Dorsey & Whitney, LLP
50 South 6th Street
Suite 1500
Minneapolis, MI 55402

*For the Defendant:*
JUNE R. BUCH, ESQ.
New York City Law Department
100 Church Street, Room 3-165
New York, NY 10007

**BLOCK, District Judge:**

        Qwest Communications Corporation ("Qwest") brought this action against The City of New York ("City"), seeking a declaration that the New York City Charter ("Charter"), New York City Council Resolution No. 529 ("Resolution") and the Franchise Agreement between Qwest and the City ("Franchise Agreement") are preempted by section 253 of the Federal Telecommunications Act of 1996 ("FTA"). In addition, Qwest seeks damages and other relief pursuant to 42 U.S.C. § 1983, on the ground that the Charter, Resolution and Franchise Agreement violate section 253 of the FTA, the dormant Commerce Clause and the Due Process Clause. The City has moved to dismiss the

1

Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated in open court on September 14, 2005, as recapitulated and reinforced in this Memorandum and Order, the motion is granted with respect to Qwest's due-process claim and denied in all other respects.

**A. Section 253 Claim of the FTA**

Under section 253, state and local regulations "that prohibit or have the effect of prohibiting any company's ability to provide telecommunications services are preempted [under section 253(a)] unless such regulations fall within either of the statute's two 'safe harbor' provisions, [sections] 253(b) and (c)." *TC Systems, Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 480 (N.D.N.Y. 2003). The safe-harbor provisions of sections 253(b) and (c) are not independent limitations on state and local regulations, which means that it is not sufficient to allege only a violation of section 253(b) or (c); rather, in lay terms, an action lies under section 253 only where there has been both a violation of section 253(a) and either section 253(b) or (c). *See TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 77 (2d Cir. 2002); *see also Bell South Telecommunications v. Town of Palm Beach*, 252 F.3d 1169, 1188 (11th Cir. 2001). Only section 253(c), which permits state and local regulations of the public's rights-of-way, is applicable here.

Therefore, to establish an action under section 253 of the FTA, the Court must first determine whether the City's regulations fall within the proscription of 253(a) and then, if they do, the Court must determine whether there are any provisions in the regulations that fall under the umbrella of section 253(c). *See Town of Colonie*, 263 F. Supp.

2

2d at 481 (citing *TCG New York, Inc.*, 305 F.3d at 77); *see also Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1269 (10th Cir. 2004).

Qwest has stated a claim under section 253 of the FTA because the Charter, Resolution and Franchise Agreement, taken together, fall within the proscription of section 253(a) and are not saved by section 253(c). The Resolution essentially affords the City unfettered discretion to grant or deny an application to use the City's rights-of-way: it requires the City in evaluating franchise applications to consider certain public interest factors and places no limit on the City as to what other factors it may consider in its evaluations. *See TCG New York, Inc.*, 305 F.3d at 76 (finding prohibition under 253(a) where ordinance gave the defendant city the right to reject an application based on any "public interest factors . . . that are deemed pertinent by the [city.]"). Although the City argues that the existence of Franchise Agreement forecloses Qwest from challenging the Resolution, the Court disagrees because the City was presumably able to leverage the offending terms of the Resolution in its negotiations with Qwest over the terms of the Franchise Agreement.

In any event, the Franchise Agreement itself amounts to a prohibition under section 253(a) because it provided the City with the right to revoke the Franchise Agreement if the City unilaterally determines that Qwest has violated any of the terms of the Franchise Agreement and because it required Qwest to waive all legal challenges for at least three years from the date of execution of the Franchise Agreement. *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1176 (9th Cir. 2001) ("[T]he ultimate cudgel is that each city reserves discretion to grant, deny, or revoke the franchises and the Cities may

3

revoke the franchise if the terms in the ordinance are not followed, even allowing the Cities to remove the company's facilities."). Furthermore, the Court notes that subjecting Qwest but not Verizion, the incumbent telecommunications services provider, to the terms of the Franchise Agreement may very well amount to a prohibition under section 253(a). *See Montgomery County Maryland v. Metromedia Fiber Network, Inc.*, 326 B.R. 483, 494 (S.D.N.Y. 2005) ("[S]ubjecting new market entrants . . . to a lengthy and discretionary application process, while exempting the incumbent provider, Verizon, from such process, has the effect of prohibiting the provision of telecommunications services, because it materially inhibits or limits the ability of the new entrant to compete in a fair and balanced legal and regulatory environment." (internal citations and quotations omitted)). However, the Court need not resolve that issue here.

Next, the Court concludes that the gross-revenue-fee provision does not fall within the safe-harbor provision of section 253(c) because the fee requirement has been applied on a discriminatory basis. *See TCG New York, Inc.*, 305 F.3d at 67 ("In order for the fee to fall within th[e] savings clause [of section 253(c)], the fee must constitute 'fair and reasonable compensation' and must be applied 'on a nondiscriminatory basis.'"). The discriminatory treatment between Qwest and Verizon clearly runs afoul of section 253(c). *See id.* at 79 ("[T]he disparate treatment is plainly not competitively neutral and nondiscriminatory."). Furthermore, contrary to the City's contention, it is immaterial that the City has brought a state court action against Verizon in an attempt to subject Verizon to similar requirements. *See id.* at 80 (section 253 "does not limit municipalities to charging

fees that are 'competitively neutral' to the extent permitted by state law; it forbids fees that are not competitively neutral, period, without regard to the municipality's intent.").

The Court also rejects the City's contention that the claim is barred by issue preclusion or waiver. In regard to issue preclusion, the City argues that the section 253 claim should be dismissed because the same issue was previously decided in *US West Communications, Inc. v. City of Eugene*, 37 P.3d 1001 (Or. Ct. App. 2001), rev'd on other grounds, 81 P.3d 702 (Or. 2003), where the Oregon Court of Appeals upheld the rights-of-way fee provision of the City of Eugene's telecommunications ordinance in the face of a challenge under section 253 by Qwest's predecessor, US West Communications ("US West"). However, the Oregon decision is not entitled to preclusive effect because the City of Eugene Ordinance challenged by US West materially differs from the Franchise Agreement challenged by Qwest as the City of Eugene Ordinance applied to all telecommunication carriers; moreover, *US West Communications, Inc.*, involved a narrow challenge to the rights-of-way fee provision as opposed to the broad challenge to the City's Requirements here. *See Qwest Corp. v. City of Portland*, 385 F.3d 1236 (9th Cir. 2004) (holding that Qwest's narrow challenge to the defendant cities' rights-of-way fee provisions -- not its challenge to the various Ordinances as a whole -- were subject to issue preclusion).

In regard to waiver, although the Franchise Agreement does indeed contain a waiver provision in which Qwest agreed not to challenge any provision of the Franchise Agreement within three years of the effective date of the Franchise Agreement, the waiver

5

is not enforceable. See *TCG New York, Inc.*, 305 F.3d at 81-82 ("Requiring telecommunications providers to agree not to challenge the provisions of the franchise in court is a transparent attempt to circumvent § 253. The [FTA] does not create a collection of default rules that municipalities and service providers can contract around.").

**B. 42 U.S.C. § 1983 Claims**

**1. Section 253 of the FTA**

Although Qwest has stated a claim that the City's regulations violate section 253 of the FTA, it is a separate question as to whether Qwest has stated a claim under section 1983 for the FTA violation; the Court concludes it has stated a viable 1983 claim. The Second Circuit has explained that a rule of preemption is enforceable under section 1983 where it is "akin to a rule that denies either [the federal or state] sovereign the authority to abridge a personal liberty[,]" but not where the rule exists only "in the interest of maintaining uniformity in the administration of the federal regulatory jurisdiction." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 323 (2d Cir. 2005). Because the purpose of section 253 was to "remove *all* barriers" – by federal, state or local entities – "to entry in the provision of telecommunications services," H.R. No. 104-458, at 126 (1996) (Conf. Rep.) (emphasis added), section 253 is more akin to a rule that denies either sovereign the authority to abridge a personal liberty and therefore is enforceable under section 1983.

**2. Dormant Commerce Clause**

In regard to the 1983 claim based on the dormant Commerce Clause, the Court again concludes that Qwest has stated a claim. Qwest's Complaint, when viewed

in the most favorable light, as the Court must in a motion to dismiss, alleges that the Charter, Resolution and Franchise Agreement violate the dormant Commerce Clause because they "impede . . . [Qwest's] ability to provide [interstate] telecommunications services" in favor of the City's concern for its residents and its rights-of-way. Compl. ¶¶ 73-74; *see Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217-18 (2d Cir. 2004) (dormant Commerce Clause violation established where state action "imposes a burden on interstate commerce incommensurate with the local benefits secured" (citations and internal quotations omitted)). Such an allegation is sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).

### 3. Due Process Clause

Lastly, in regard to the 1983 claim based on the Due Process Clause, the Court concludes that Qwest has not stated a claim. To the extent that Qwest is asserting a claim based on the City's requiring Qwest to enter into the Franchise Agreement, even assuming *arguendo* that Qwest has a property right in using the City's rights-of-way, "the City has not 'taken' property . . . but, instead, has exercised its right to approve or deny permission as granted by . . . statute." *Town of Colonie*, 263 F. Supp. 2d at 492-93 ("Thus, as [t]he City was simply exercising its regulatory powers in requiring TCG to agree to a franchise it was clearly not in violation of the Fourteenth Amendment."). Additionally, to the extent that Qwest is asserting a claim regarding the provision in the Franchise Agreement that permits the City to take, upon termination of the Franchise Agreement, Qwest's equipment that is

placed in the City's rights-of-way, the claim is unripe because no such deprivation has yet occurred.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated: Brooklyn, New York
September 15, 2005